# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## AT LONDON

**CIVIL ACTION NO. 16-285-DLB**

**PREFERRED CARE, INC., et al.**                                        **PLAINTIFFS**


**V.**                          **MEMORANDUM OPINION AND ORDER**


**EDWARD AARON, as administrator**
**of the Estate of Janis Aaron**                                        **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Defendant Edward Aaron is the son of Janis Aaron, and the administrator of her estate. On November 15, 2016, the Defendant filed suit in Pulaski County Circuit Court against Preferred Care, Inc. and others,[1] who were responsible for Janis Aaron's care while she resided at Cumberland Nursing and Rehabilitation Center in Somerset, Kentucky. (Doc. # 1-2 at ¶ 1-3). The state-court complaint alleges claims for negligence, medical negligence, corporate negligence, and wrongful death. *Id.* at pp. 10-23.

On December 8, 2016, the Plaintiffs in this action—Preferred Care, Inc.; Kentucky Partners Management, LLC; Preferred Care Partners Management Group, LP; and Somerset Health Facilities, LP (collectively "Plaintiffs")—filed suit in federal court, seeking to compel arbitration and enjoin the state-court action because the parties executed an

---

[1] The underlying state-court complaint names the following defendants: Preferred Care of Delaware, Inc.; Somerset Health Facilities, LP; Somerville Health Facilities GP, LLC; Preferred Care Partners Management Group, LP; PCPMG, LLC; Kentucky Partners Management, LLC; Jill Spurgeon, in her capacity as Administrator of Cumberland Nursing and Rehabilitation Center; and John Does 1 through 6. (Doc. # 1-2).

alternative dispute resolution agreement during Janis Aaron's stay at the nursing home. (Doc. # 1). The Defendant has moved to dismiss this action. (Doc. # 7). Plaintiffs having filed their Response (Doc. # 8), and the time for a Reply having passed, the motion is fully briefed and ripe for review.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Janis Aaron was a resident of Cumberland Nursing and Rehabilitation Center from November 8, 2012 until January 26, 2016. (Doc. # 1-2 at ¶ 3). Her son alleges that during her stay, Janis suffered infections, dehydration, falls that resulted in injuries, pressure sores, skin breakdown, and death. *Id.* at ¶ 22. In the state-court complaint, the Defendant claims that Preferred Care, Inc., the owner and operator of Cumberland Nursing and Rehabilitation Center, and the other associated entities, breached their duty to Janis and caused her injuries by "knowingly develop[ing] and maintain[ing] staffing levels at the facility without regard to patient acuity levels or the minimal time to perform the essential functions of providing care to Janis." *Id.* at ¶ 27.

On November 19, 2012, Edward Aaron, in his capacity as attorney-in-fact for Janis, signed an alternative dispute resolution agreement (the "Arbitration Agreement" or "Agreement"). (Docs. # 1-1 and 1-3). The Arbitration Agreement states that the parties have voluntarily and mutually agreed "that any disputes covered by [the] Agreement … that may arise between the Parties shall be resolved exclusively by an [alternative dispute resolution] process that shall include mediation and, where mediation does not successfully resolve the dispute, binding arbitration." *Id.* at ¶ 3. The Agreement purports to bind the parties, as well as "their heirs, successors, and assigns," and requires the arbitration of "any and all disputes arising out of or in any way relating to [the] Agreement

or to the Resident's stay at the Center that would constitute a legally cognizable cause of action in a court of law." *Id.* at ¶¶ 1, 4. The Agreement claims to encompass "all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death and any alleged departure from any applicable federal, state or local medical, health care, consumer or safety standards." *Id* at ¶ 4. The Agreement also provides that acceptance of its terms is not a condition of admission to or continued residence in the facility. *Id.* at ¶ 14.

Despite the existence of the Arbitration Agreement, the Defendant filed suit in Pulaski County Circuit Court. (Doc. # 1-2). In response, Plaintiffs commenced this action in federal court, seeking to compel arbitration and asking the Court to enjoin the Defendant from further pursing his claims in state court. (Doc. # 1 at pp. 7-8). Now, Defendant moves to dismiss this action on three grounds: lack of subject-matter jurisdiction, *Colorado River* abstention, and failure to state a claim upon which relief can be granted. (Doc. # 7). The Court will address each of these arguments in turn.

## II. ANALYSIS

### A. Jurisdiction

As a preliminary matter, the Court must first resolve the jurisdictional issues raised in Defendant's Motion to Dismiss. *See Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998) ("The first and fundamental question presented by every case brought to the federal court is whether it has jurisdiction to hear a case."). Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack of subject matter

jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of a Rule 12(b)(1) analysis." *Id.* In the context of a factual attack, however, the Court has "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determining the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60 (citing *DLX, Inc. v. Kentucky*, 381F.3d 511, 516 (6th Cir. 2004)). It is the Plaintiffs' burden to prove "that jurisdiction does in fact exist." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir, 1996)).

It is well established that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does not provide an independent basis for federal jurisdiction. *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). Therefore, plaintiffs seeking to compel arbitration under the FAA must assert an independent source of subject-matter jurisdiction. In this case, Plaintiffs have invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, claiming that all of the Plaintiffs are citizens of Texas, the Defendant is a citizen of Kentucky, and the amount-in-controversy exceeds $75,000.00. (Doc. # 1 at ¶¶ 2-8).

There is no dispute regarding the parties' citizenship or the amount-in-controversy. Complete diversity of citizenship exists on the face of Plaintiffs' Complaint. However, the Defendant contends that the action is actually non-diverse, because named defendants

in the state-court action, who are "necessary and indispensable parties," are Kentucky citizens. (Doc. # 7-2 at 2-9). Specifically, the Defendant claims that Jill Spurgeon, the administrator of Cumberland Nursing and Rehabilitation Center, is a "necessary and indispensable party" under Federal Rule of Civil Procedure 19, and that failure to join her in this action requires dismissal under Rule 12(b)(7).

Rule 19 "establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001) (citing *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993)). "A court must first determine 'whether a person is necessary to the action and should be joined if possible.'" *Id.* (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763-64 (6th Cir. 1999)). Under Rule 19(a), a party is "necessary" if:

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may … leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). Defendant's claims in the state-court action are directed at the corporate entities (Plaintiffs in this action), as well as the administrator Jill Spurgeon, and those claims are based on the same occurrence—alleged negligence at Cumberland Nursing and Rehabilitation Center. Moreover, the Arbitration Agreement, by its terms, governs claims against both the corporate entities and the administrator. (Doc. # 1-1 at ¶ 2(a)) ("'Center'" as used in this Agreement shall refer to the nursing facility, its employees, agents, officers, directors."). If this Court and the Pulaski County Circuit Court were to reach "different conclusions regarding whether" the Arbitration Agreement applies to Defendant's claims against the corporate entities and the administrator, the Defendant

"would be faced with inconsistent procedural remedies against the alleged joint tortfeasors." *PaineWebber*, 276 F.3d at 201. Therefore, the administrator, Jill Spurgeon, is a "necessary party" under Rule 19(a).

"If the party is deemed necessary for the reasons enumerated in Rule 19(a), the court must next consider whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction." *PaineWebber*, 276 F.3d at 200. The sole basis for subject-matter jurisdiction in this action is diversity of citizenship. The administrator is alleged to be a citizen of Kentucky; therefore, she is subject to personal jurisdiction and her "presence in this action would … eliminate complete diversity of citizenship" and "deprive the court of subject-matter jurisdiction." *Id.* at 201-02.

Therefore, the Court must consider the third and final step in this analysis — "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed" because the absent party is "indispensable." *PaineWebber*, 276 F.3d at 200. "Rule 19(b) lists four factors that a court must consider in determining whether a necessary party is also indispensable":

> First, the court must decide the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already parties" to the action. The second factor requires the court to determine whether and to what extent it might be able to reduce or avoid the prejudice "by protective provisions in the judgment, by the shaping of relief, or other measures." Rule 19(b)'s third consideration is "whether a judgment rendered in the person's absence will be adequate." Finally, the court must assess "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

*Id.* at 202 (internal citations omitted). "If a necessary party is not deemed indispensable pursuant to Rule 19(b), the potential party need not be joined and the action can proceed

with the original litigants." *PaineWebber*, 276 F.3d at 200-01.

Consideration of the four factors dispels any contention that the administrator is an indispensable party. First, the only potential prejudice to the Defendant is based on "the potentially inconsistent legal obligations that might result from conflicting interpretations of the [Arbitration Agreement] by the state and federal courts." *PaineWebber*, 276 F.3d at 202. But this prejudice is "minimal" and insufficient to support a finding that the administrator is an indispensable party. *Id.* "As an initial matter, the possibility of having to proceed simultaneously in both state and federal court is a direct result of [the Defendant's] decision to file a suit naming [the corporate entities] and [the administrator] in state court rather than to demand arbitration under the [Arbitration Agreement]." *Id.*

Additionally, there is no indication that any judgment rendered in the administrator's absence would be inadequate. The Defendant claims that in the administrator's absence, complete relief cannot be obtained. (Doc. # 7-2 at 7). However, the possibility that Defendant would have to arbitrate his claims against the corporate entities, while proceeding against the administrator in state court, does not affect the adequacy of any judgment between the Defendant and the corporate entities.

The final factor—the ability to litigate in the Pulaski County Circuit Court—is the only factor that weighs in favor of finding the administrator is an "indispensable party." Nevertheless, the "existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *PaineWebber*, 276 F.3d at 205 (internal citations omitted). Moreover, important policy considerations underlying the FAA, which require that federal courts remain available to enforce arbitration agreements in diversity cases, "weigh against the conclusion that [the administrator] is an indispensable party."

*Id.* at 205. "Any ruling to the contrary would virtually eliminate the availability of federal courts to enforce arbitration clauses in diversity cases by the simple expedient of one of the parties filing a preemptive suit in state court with at least one non-diverse defendant." *Id.* Accordingly, the requirements of diversity jurisdiction have been met, the administrator is not an "indispensable party" in this action, and Plaintiffs' failure to join the administrator does not undermine this Court's jurisdiction.

### B.    Abstention

Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Because the Court has subject-matter jurisdiction over this matter, the "[a]bdication of the obligation to decide [this case] can be justified" only if "exceptional circumstances" exist. *Id.* at 813. As a general rule, the pendency of an action in state court is no bar to proceedings concerning the same matter in federal court. *Id.* at 817. However, in exceptional circumstances, "a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *PaineWebber*, 276 F.3d at 206 (quoting *Colorado River*, 424 U.S. at 817.)

"The Supreme Court has identified eight factors … that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of a state court." *Id.* (citing *Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998)). Those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties;

(3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id.* "When considering these factors, [the Court] recognize[s] that 'the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* at 207 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

In this case, the balance of the factors weigh against abstention.[2] The third and "paramount" factor—the avoidance of piecemeal litigation—weighs heavily against abstention. *Moses H. Cone*, 460 U.S. at 19. When analyzing the *Colorado River* factors, the "most important" consideration is "whether there is a clear federal policy evincing the avoidance of piecemeal adjudication found within the statutory scheme at issue." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (internal citations and quotation marks omitted). The Sixth Circuit has made clear that, with respect to the FAA, there is no such policy. *Id.* The "misfortune" of having piecemeal litigation in the arbitration context "is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires*

---

[2] "Before the *Colorado River* doctrine can be applied, the district court must first determine whether the concurrent state and federal actions are actually parallel." *Romine*, 160 F.3d at 339. Although "exact parallelism" is not required, the proceedings must be "substantially similar." *Id.* at 340. In this case, the state and federal actions differ procedurally, but involve "substantially similar" parties and arise from the "same material facts." *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 393 (6th Cir. 2017). Therefore, "despite their differences … the two actions are similar enough to satisfy the threshold requirement under *Colorado River* that they be parallel." *Id.* at 394.

piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20. Accordingly, the most important factor weighs in favor of exercising jurisdiction.

As for the first factor, nothing in the record suggests that the Pulaski County Circuit Court has assumed jurisdiction over any res or property; thus, this factor does not support abstention. The fifth factor also tilts the balance in favor of exercising jurisdiction, because federal law—the FAA—provides the source of law for interpreting the Arbitration Agreement. *PaineWebber*, 276 F.3d at 208. As the Defendant contends, Kentucky law will govern the validity of the Arbitration Agreement, as well as the merits of the underlying state-court claims. (Doc. # 7-2 at 10-11). However, the FAA governs the *enforceability* of the Arbitration Agreement—the critical issue in a petition to compel arbitration. *PaineWebber*, 276 F.3d at 208. Accordingly, the first, third, and fifth factors weigh against abstention.

Two factors—the fourth and the seventh—are, at most, neutral. With regard to the fourth factor, the state court obtained jurisdiction twenty-three days before Plaintiffs filed their petition in federal court to compel arbitration. This slight "temporal delay is insignificant." *Id.* at 207 (citing *Moses H. Cone*, 460 U.S. at 21); *see also GGNSC Vanceburg, LLC v. Taulbee*, No. 5:13-cv-71-KSF, 2013 WL 4041174, at *4 (E.D. Ky. Aug. 7, 2013) (finding the "passage of twenty-seven days is … too insignificant to justify the use of abstention"). Moreover, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Therefore, the seventh factor focuses on the relative progress of the state and federal proceedings. In this case, the action in the

Pulaski County Circuit Court has technically proceeded further than the present one; however, neither the state case nor the federal case have progressed significantly.[3] Therefore, the fourth and seventh factors weigh against abstention, or are neutral at best.

Only three factors—the second, sixth, and eighth—weigh slightly in favor of abstention. As for the second factor, it is possible that the federal forum is less convenient for the parties. The state-court action was filed in Pulaski County. This federal action is on the Court's London docket, and all proceedings would occur at the federal courthouse in Laurel County. Although the federal forum requires only a forty-five-minute drive on the Hal Rogers Parkway, this factor weighs slightly in favor of abstention. The sixth factor also favors abstention because the Court has every reason to believe that the Pulaski County Circuit Court would adequately protect Plaintiffs' rights, particularly because the FAA is binding on state courts. *PaineWebber*, 276 F.3d at 208. The eighth and final factor—the presence or absence of concurrent jurisdiction—supports abstention only "marginally," if at all. *VanArsdale*, 676 F. App'x at 397. Federal courts are more likely to abstain under *Colorado River* where concurrent jurisdiction exists; however, the Sixth Circuit has clarified that concurrent jurisdiction "is insufficient to justify abstention … where a congressional act provides the governing law and expresses a preference for federal litigation." *Id.* at 208-09 (citing *Moses H. Cone*, 460 U.S. at 25 n.32 (emphasizing that the FAA "represents federal policy to be vindicated by the federal courts where

---

[3] A review of Kentucky's CourtNet database confirms that little activity has occurred in the state-court action since Plaintiffs filed their petition in federal court. Since December 8, 2016, there have been two Notices filed regarding Plaintiff's counsel. Therefore, the progression of this case is drastically different than cases where the Sixth Circuit has found the fourth factor favors abstention. In *Romine*, the state-court action had proceeded past the pleading stage and entered into discovery. *Romine*, 160 F.3d at 342. Likewise, the Sixth Circuit affirmed the district court's decision to abstain in *VanArsdale*, where the state court had "already granted summary judgment on the issue of enforceability." *VanArsdale*, 676 F. App'x at 396.

otherwise appropriate")).

In sum, the *Colorado River* doctrine neither counsels nor requires abstention here. Although some factors slightly support abstention, with a thumb on the scale in favor of exercising jurisdiction,[4] the balance of the factors weighs heavily against abstention. Therefore, this case does not present the "exceptional" circumstances necessary to compel this Court to abandon its obligation to exercise jurisdiction. *Colorado River*, 424 U.S. at 817. Accordingly, the Court declines to abstain.

### C. Legal Sufficiency of Plaintiffs' Complaint

With the jurisdictional issues resolved, the Court now turns to the legal arguments the Defendant has raised in support of his Motion to Dismiss. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson Cty.*, 814 F.2d 277, 279 (6th Cir. 1987)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions." *Id.* Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[4]  The Supreme Court has instructed that the balance of the factors under *Colorado River* is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

### *1.    The Arbitration Agreement involves interstate commerce.*

The Defendant asks the Court to dismiss Plaintiffs' Complaint because the Arbitration Agreement "does not evidence a transaction involving interstate commerce," and thus, is unenforceable under the FAA.  (Doc. # 7-2 at 13-14).  This contention has been flatly rejected by courts in the Eastern District of Kentucky.  *See, e.g.*, *Preferred Care, Inc. v. Belcher*, No. 14-cv-107-JMH, 2015 WL 1481537, at *6-7 (E.D. Ky. Mar. 31, 2015, *Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796, 809-10 (E.D. Ky. 2016); *GGNSC Stanford, LLC v. Gilliam*, 205 F. Sup. 3d 884, 894 (E.D. Ky. 2016); *Diversicare of Nicholasville, LLC v. Lowry*, 213 F. Supp. 3d 859, 867-78 (E.D. Ky. 2016); *GGNSC Frankfort, LLC v. Moore*, No. 3:17-cv-45-GFVT, 2017 WL 2805147, at *3 (E.D. Ky. June 28, 2017).

For an arbitration agreement to be enforceable under the FAA, the contract must evidence a "transaction involving commerce."  9 U.S.C. § 2.  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995)).  The "FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'"  *Id.*  Therefore, the FAA applies to the parties' Arbitration Agreement, even "without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice … subject to federal control."  *Id.* at 56-57.

"The Supreme Court has held that health care is one such activity." *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 289 (Ky. 2012) (citing *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991).  Because arbitration agreements are typically viewed as a component of the larger residency contract, which involves interstate commerce under the FAA, many courts "have applied the FAA to arbitration provisions in nursing home admission contracts." *Id.* at 589-90.   Accordingly, Defendant's argument that the Arbitration Agreement is unenforceable under the FAA because it does not evidence a transaction involving interstate commerce is without merit.

> **2.    The Defendant had authority to enter into the Arbitration Agreement.**

The Defendant also claims that he lacked the authority to enter into the Arbitration Agreement.  (Doc. # 7-2 at 14-17).  This argument is easily rejected.

Under Kentucky law, "[t]o create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract." *Conners v. Eble*, 269 S.W.2d 716, 717-18 (Ky. 1954).  "Assent to be bound by the terms of an agreement must be expressed." *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451, 456 (Ky. 2009).  "A person's assent to a contractual agreement can be provided by an agent acting as an attorney-in-fact, *if* the authority to do so was duly conferred upon the attorney-in-fact by the power-of-attorney instrument." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015) *overruled on other grounds by Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424-25 (2017).  "Conversely, if that authority was not so conferred by the principal, the requisite assent, of course, cannot be provided by the attorney-in-fact." *Id.*

Until recently, Kentucky courts routinely "declined to give effect to … arbitration agreements executed by individuals holding "powers of attorneys"—that is, authorizations to act on behalf of others. *Kindred*, 137 S. Ct. at 1424-25. Specifically, the Kentucky Supreme Court had determined that "a general grant of power (even if seemingly comprehensive) does not permit a legal representative to enter into an arbitration agreement for someone else." *Id.* at 1425. Rather, "to form such a contract, the representative [was required to] possess specific authority to 'waive his principal's fundamental constitutional rights to access the courts [and] to trial by jury.'" *Id.* (quoting *Whisman*, 478 S.W.3d at 327). However, on May 15, 2017, the United States Supreme Court held that the *Whisman* clear-statement rule "single[d] out arbitration agreements for disfavored treatment" and thus, violated the FAA. *Id.* Accordingly, the *Whisman* clear-statement rule no longer lends support to the Defendant's argument that the Arbitration Agreement is invalid and unenforceable because he did not have the requisite authority to enter into the Agreement.

Therefore, the Defendant's lack-of-authority argument can succeed only if the powers granted in the Power of Attorney are not broad or clear enough—disregarding the clear-statement rule—to encompass the signing of a pre-dispute arbitration agreement. *See Ping*, 376 S.W.3d 581. "The construction of a power of attorney is a question of law for the court," and Kentucky courts have adopted a "careful approach" for determining "the authority created by a power of attorney." *Id.* at 590, 592. Accordingly, an "agent's authority under a power of attorney is to be construed with reference to the types of transactions expressly authorized in the document and subject always to the agency's duty to act with the 'utmost good faith.'" *Id.*

Janis Aaron granted the Defendant the authority to "make contracts;" to "draw, make and sign any and all checks, contracts, or agreements;" and "generally to do and perform for [Janis] and in [her] name all that [she] might do as present." (Doc. # 1-3). Even in *Whisman*, the Kentucky Supreme Court held that "a literal comprehension of the extraordinarily broad grant of authority expressed by" a provision which grants the attorney-in-fact the authority "'to do and perform for [the principal] in [her] name all that [she] might if present'—requires no inference about what the scope of authority encompassed within the expressed power." *Whisman*, 478 S.W.3d at 327. Although "[o]ne might entertain considerable doubt about whether [Janis] consciously intended to forfeit her right of access to the courts and to a jury trial," the language of the Power of Attorney "encompasses that result regardless of [her] actual intent." *Id.* With such a "broad, universal delegation of authority, it would be impossible to say that entering into a pre-dispute arbitration agreement was not covered." *Id.* Therefore, the Defendant had the requisite authority to enter into the Arbitration Agreement.

### 3. The Arbitration Agreement is not unconscionable.

Kentucky courts consider the doctrine of unconscionability to be a narrow exception to the rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Schnuerle v. Insight Commc'ns Co.*, 376 S.W.3d 561, 575 (Ky. 2012) (citing *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001)). The doctrine of unconscionability "is used by courts to police the excesses of certain parties who abuse their right to contract freely." *Id.* Therefore, unconscionability "is directed against one-sided, oppressive and unfairly surprising contracts." *Id.* "[N]ot

against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* An unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Id.*

"[R]eview of arbitration causes for unconscionability involves a two-step process—first, a review focused on the procedures surrounding the making of the arbitration clause (procedural unconscionability) and second, a review of the substantive content of the arbitration clause (substantive unconscionability)." *Id.* at 575-76 (citing *Conseco*, 376 S.W.3d at 343 n.22). The Defendant attacks the Arbitration Agreement on both procedural and substantive unconscionability grounds. (Doc. # 7-2 at 18-20). Therefore, the Court will review the Arbitration Agreement under the two-step framework.

### a. Procedural Unconscionability

"Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement." *Energy Home, Div. of So. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (internal citations omitted). "Unfair surprise" can result from the use of "fine print and convoluted or unclear language" and "often appear[s] in the boilerplate of a printed form." *Schnuerle*, 376 S.W.3d at 576. Specifically, procedural unconscionability involves "material, risk-shifting terms which are not typically expected by the party who is being asked to assent to them." *Id.* (internal citations and quotation marks omitted). "Factors relevant to the procedural unconscionability inquiry include the bargaining power of the parties, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Id.*

With respect to procedural unconscionability, the Defendant argues that the Arbitration Agreement "is part of a mass-produced, boiler-plate, legalistic, pre-printed document." (Doc. # 7-2 at 18). However, an Arbitration Agreement is "not render[ed] … procedurally unconscionable" solely because it is a boilerplate, "preprinted form." *Conseco*, 47 S.W.3d at 343 (finding arbitration clause that appeared single-spaced on the back of a preprinted form was not procedurally unconscionable). Moreover, the Arbitration Agreement in this case was not presented in a manner which would result in "unfair surprise." *Id.* at 342 n.22. The Agreement was not concealed or disguised within the form; it is a stand-alone, five-page document titled "Alternative Dispute Resolution Agreement – Kentucky." (Doc. # 1-1). The Agreement is written in clear terms, with normal-sized font and conspicuous bold headings. *Id.* Therefore, the form of the Arbitration Agreement is not unconscionable.

Nor was the Agreement reached in an unconscionable manner. The Defendant claims that submitting to arbitration was "constructively mandatory for admission to the facility," and suggests that the Agreement was "likely presented [to him] within a lengthy stack of admissions paperwork in a stressful and emotional time." (Doc. # 7-2 at 18-19). The first of these assertions is belied by the record; the second is insufficient to prove unconscionability. First, the Arbitration Agreement was *not* a condition to admission at Cumberland Nursing and Rehabilitation Center, and the Agreement explicitly states that.[5] (Doc. # 1-1 at 4) ("The Resident understands that this Agreement is **not** a condition of admission to or continued residence in the Center."). Furthermore, asking the Defendant

---

[5] Even if the Arbitration Agreement "was a contract of adhesion … in the sense that [the Defendant] was not given the opportunity to negotiate for the parts of the [arbitration] agreement he liked and to bargain away the parts he disliked," this "take it or leave it option" is not necessarily unconscionable. *Energy Home*, 406 S.W.3d at 836.

to review and execute multiple documents at the same time, during an admittedly stressful time, does not render the Arbitration Agreement unconscionable. *See Howell*, 187 F. Supp. 3d at 810 ("By asking [the defendant] to sign all the documents at the same time, [he] seems to argue, the plaintiffs asked too much of him."). "This Court, however, is aware of no authority suggesting that an agreement is unconscionable simply because it was signed along with other agreements, no matter how numerous." *Id.*

The Defendant also highlights the "gross disparity of bargaining power" between the parties. (Doc. # 7-2 at 18). However, uneven bargaining power, although a relevant factor, is insufficient in and of itself to establish unconscionability. *Schnuerle*, 376 S.W.3d at 575 (unconscionability is not directed "against the consequences *per se* of uneven bargaining power"). Rather, to prove unconscionability, the Defendant must show that the Agreement is so "one-sided, oppressive, and unfairly surprising" that no man in his right mind would accept the offer. *Id.* The Defendant has failed to meet this burden. Accordingly, the Arbitration Agreement is not procedurally unconscionable.

### b. Substantive Unconscionability

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Energy Home*, 406 S.W.3d at 835. In determining whether the substance of an agreement is unconscionable, "courts consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Schnuerle*, 376 S.W.3d at 577.

The Defendant also challenges the substance of the Arbitration Agreement. Specifically, the Defendant takes issue with three provisions of the Arbitration Agreement:

(1) the requirement to arbitrate issues regarding the formation of the contract; (2) the administration of the arbitration by DJS Administrative Services; and (3) the obligation to pay certain fees associated with the arbitration. *Id.* at 19-20. None of these provisions render the Arbitration Agreement substantively unconscionable.

The Arbitration Agreement purports to cover "any and all disputes arising out of or in any way pertaining to [the] Agreement." (Doc. # 1-1 at ¶ 4). Specifically, the Arbitration Agreement claims to require arbitration of "the scope of or applicability of [the] Agreement to mediate/arbitrate." *Id.* Any concerns the Defendant has regarding the ability to litigate the formation and enforceability of the Arbitration Agreement should be assuaged by this Memorandum Opinion and Order. "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). And a court will compel mediation only if "the district court is satisfied that the agreement to arbitrate is not 'in issue.'" *Great Earth*, 288 F.3d at 889 (citing 9 U.S.C. § 4). Therefore, the existence and validity of an agreement to arbitrate is a question for the Court.[6]

The Defendant's contention that the administration of the arbitration by DJS Administrative Services renders the Agreement unconscionable is meritless.[7] The

---

[6] "Once the district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator." *Great Earth*, 288 F.3d at 889.

[7] The Defendant cites case law in support of its challenge of DJS Administrative Services' administration that rebuke "unilateral control over arbitrators." (Doc. # 7-2 at 19). The Sixth Circuit has held that "exclusive control over the pool of potential arbitrators renders" an agreement to arbitrate "fundamentally unfair" in the Title VII context. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 492 (6th Cir. 2004). But the parties' Arbitration Agreement does not contain an "impermissible arbitrator-selection provision." *Id.* at 496. Although the Agreement does specify that DJS Administrative Services will serve as the "independent" and "impartial" administrator, it provides that the mediation or arbitration will be "conducted by a Neutral." (Doc. # 1-1 at ¶ 6).

Defendant suggests that there is a close and impermissible relationship between the Plaintiffs and DJS Administrative Services, "a small company set up at the behest of one of Kentucky's nursing home conglomerates," who will administer the arbitration. (Doc. # 7-2 at 19). The Eastern District of Kentucky has considered this very argument, involving the same entity, and determined that such "speculation is insufficient to give the Court pause." *Belcher*, 2015 WL 1481537, at *9 n.3. "Conspiracy theories have no place in litigation."[8] *Id.* Therefore, the "fact that Defendant may now wish that he had bargained for what he views as additional protections or a different set of arbitration rules or administrators is not enough" to cast doubt on the validity of the Arbitration Agreement. *Id.* at *9.

And lastly, the provision obligating the parties to pay certain fees associated with the arbitration does not render the Arbitration Agreement unconscionable. The Arbitration Agreement provides for the following division of costs and fees:

> The Center shall pay the Neutral's fees and other reasonable costs associated with the mediation process. The Center shall pay the arbitrator's fees and other reasonable costs associated with the arbitration process up to and including five (5) days of arbitration. Absent an agreement by the Parties, or as required by a ruling by the Neutral to the contrary, the Parties shall share equally the Arbitrator's fees and costs associated with arbitration days beyond day five (5). The Parties shall bear their own costs and attorney's fees except in cases where the Neutral awards a successful Party such costs and/or fees under a provision of Kentucky law, if any that expressly authorizes such an award.

---

[8] The Defendant attempts to rely on a Pennsylvania state-trial-court decision that found the ADR system run by Extendicare *per se* unconscionable. (Doc. # 7-2 at 20) (citing *Warhola v. Extendicare, Inc.*, No. GD-15-020246)). In addition to failing to attach that decision as "Exhibit A," as Defendant claimed to do, the Defendant has failed to convince the Court that it should be persuaded by the Pennsylvania trial court's decision. Unconscionability cannot be inferred from a contract provision establishing that the arbitration will "be conducted in accordance with and governed by the Extendicare Health Services, Inc. Alternative Dispute Resolution Rules of Procedure." (Doc. # 1-1 at ¶ 7).

(Doc. # 1-1 at ¶ 10).  There is nothing commercially unreasonable about this division of costs and fees.  In fact, the Agreement appears to allocate the majority of the financial burden of arbitrating on the Plaintiffs; and in any event, it is certainly not "grossly favorable" to the Plaintiffs.  *Schnuerle*, 376 S.W.3d at 577.  Therefore, the Arbitration Agreement is not substantively unconscionable.

### 4. *The request for injunctive relief does not violate the Anti-Injunction Act.*

The Anti-Injunction Act prohibits a federal court from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  "The enumerated exceptions to the Act's prohibition on injunctions against pending state-court actions 'are narrow in their application and should not be enlarged by loose statutory construction.'"  *Great Earth*, 288 F.3d at 894 (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)).

The FAA "requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate," but "it does not specifically authorize federal courts to stay proceedings pending in state courts."  *Id.* at 893 (citing 9 U.S.C. § 3).  However, courts have uniformly held that a district court's injunction of state-court proceedings after compelling arbitration falls within the "necessary to protect or effectuate a judgment" exception of the Anti-Injunction Act.  *Id.* at 894.  Therefore, the Defendant's argument that Plaintiffs' claim for injunctive relief should be dismissed pursuant to the Anti-Injunction Act is meritless.  (Doc. # 7-2 at 22-24).

### 5. **The wrongful-death claim is not subject to the Arbitration Agreement.**

The last of the Defendant's arguments—that the Arbitration Agreement does not apply to the wrongful-death claims—is the only argument with merit. Under Kentucky law, a decedent (or a representative thereof) has no authority to bind wrongful death beneficiaries to an arbitration agreement. *Ping*, 376 S.W.3d at 600. [9] This is so because a wrongful-death claim "is not derived through or on behalf of the [decedent], but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss. *Id.* at 599; *see also* Ky. Rev. Stat. Ann. § 411.130.

"That the Agreement purports to extend to wrongful death beneficiaries makes no difference." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197 (6th Cir. 2016); (Doc. # 1-1 at ¶ 1) ("[T]his Agreement shall inure to the benefit of, bind, and survive the Parties, their heirs, successors, and assigns."). Janis Aaron, even though her attorney-in-fact, "had no authority to make contracts disposing of, encumbering, settling, or otherwise affecting claims that belong to others." *Nichols*, 811 F.3d at 197. "Stated another way, [Janis's] purported agreement to do something [she] was not authorized to do is not legally enforceable." *Id.*

Therefore, the Arbitration Agreement does "not provide a basis for compelling the wrongful-death beneficiaries to arbitrate the wrongful-death claim." *Id.* at 196 (citing *Ping*,

---

[9] The Sixth Circuit has considered and rejected the argument that the FAA preempted *Ping*. The FAA "does not force arbitration upon a party that never agreed to arbitrate in the first place under the guise of preemption principles." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 (6th Cir. 2016). The Plaintiffs' citation to a 2015 Eastern District of Kentucky case that held the FAA preempted the *Ping* wrongful-death-beneficiary rule is of no value after *Nichols*. (Doc. # 8 at 32) (citing *Golden Gate Nat. Senior Care, LLC v. Addington*, No. 5:14-cv-327-JMH, 2015 WL 1526135 (E.D. Ky. Apr. 3, 2015)).

376 S.W.3d at 597-98). "There are only two parties to the Agreement: the Center" and "the decedent," Janis Aaron.[10]  *Id.* at 197; (Doc. # 1-1). "Because the wrongful-death claim is independent in nature under *Ping*," Janis Aaron, "as the decedent, possessed no cognizable legal rights in the wrongful-death claim arising upon [her] demise." *Id.* (internal quotation marks and citations omitted). Therefore, "the Agreement cannot be enforced against wrongful-death beneficiaries." *Id.* Accordingly, Plaintiffs' Complaint must be dismissed as far as it asks this Court to compel arbitration of the wrongful-death claim.[11] As to all other underlying claims, however, the Arbitration Agreement is valid and enforceable, and Plaintiffs have stated a claim upon which relief can be granted.[12]

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)     Defendant's Motion to Dismiss (Doc. # 7) is **GRANTED IN PART**, as to the

---

[10]   Plaintiffs attempt to escape *Ping* by claiming that the Defendant, the only wrongful death beneficiary of Janis Aaron, signed the Arbitration Agreement.  (Doc. # 8 at 31).  This argument must be rejected.  First and foremost, the Defendant did not sign the Arbitration Agreement in his own capacity.  He signed the Arbitration Agreement on behalf of Janis, as her attorney-in-fact. And the Arbitration Agreement clearly identifies two parties: the Center and Janis Aaron.  (Doc. # 1-1 at ¶ 1) ("Parties to the Agreement: This Alternative Dispute Resolution ("ADR") Agreement … is entered into by Cumberland Nursing and Rehabilitation center … and Janis Aaron.").
Furthermore, the results of such a rule would be untenable.  Should only children be required to arbitrate their parent's wrongful-death claim, when similarly-situated children with siblings would not be?  The Court thinks not.  To the extent another case from this district has been decided differently, as Plaintiffs suggest (Doc. # 8 at 32), that case is an outlier within the district, and this Court respectfully disagrees.  *See, e.g., Moore*, 2017 WL 2805147, at *5 (also holding that a child signing as her parent's attorney-in-fact did not bind the child as a wrongful-death beneficiary); *Howell*, 187 F. Supp. 3d 796, 807 n.3 (holding same).

[11]   As for Plaintiffs' alternative request, asking the Court to stay the Plaintiffs' wrongful-death claim pending the arbitration, the Court declines to do so.  Staying the wrongful-death claim is not "necessary … to protect or effectuate" this judgment.  28 U.S.C. § 2283.  Plaintiffs remain free to ask the Pulaski County Circuit Court to stay the wrongful-death proceedings pending arbitration.

[12]   Plaintiffs have not yet filed a motion to compel or a motion to enjoin.  Therefore, this Memorandum Opinion and Order is limited to a discussion of Defendant's Motion to Dismiss.

wrongful-death claim asserted by Defendant in the underlying state-court action, and

**DENIED IN PART**, as to all other claims; and

(2)    Plaintiffs' Complaint (Doc. # 1) is **DISMISSED** with respect to the wrongful-death claim asserted by Defendant in the underlying state-court action.

This 3rd day of August, 2017.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\Opinions\London\16-285 MOO re MTD.docx